UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN COLEMAN LANE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:19 CV 200 SRW |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 24. Defendant filed a Brief in Support of the Answer. ECF No. 25. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On August 18, 2016, Plaintiff John Coleman Lane protectively filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*., and supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 108-09, 184-96. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 110-20.

1

Plaintiff, without the assistance of an attorney or other representative, appeared for an initial hearing on May 8, 2018. Tr. 48-83. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Karen Crist Terrill, M.S. *Id*. On November 15, 2018, the ALJ issued an unfavorable decision finding Plaintiff is not disabled. Tr. 18-30. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 180-83. On September 18, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.    Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

3

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found here that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 17, 2008; Plaintiff has the severe impairments of right shoulder impingement syndrome with acromioclavicular arthritis and biceps tendon partial tear, status-post arthroscopic surgery, left shoulder impingement with acromioclavicular arthritis, degenerative disc disease of the cervical spine, and chronic obstructive pulmonary disease; and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 23-25. The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving no climbing of ladders, ropes or scaffolds. The [P]laintiff could occasionally climb ramps or stairs. He could not engage in kneeling, crouching or crawling. He could occasionally engage in overhead reaching, pushing or pulling, bilaterally. He could have no concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants.

Tr. 25-28. At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 28. The ALJ further found Plaintiff was born on March 23, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability date and subsequently changed age category to closely approaching advanced age. *Id*. Plaintiff has a

5

limited education and is able to communicate in English. *Id*. The ALJ determined the transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework, it supported a finding that the Plaintiff was "not disabled," whether or not he had transferable job skills. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy the Plaintiff could perform, including representative occupations such as photocopy machine operator (*Dictionary of Occupational Titles* ("*DOT*") No. 207.658-014); electrical equipment sub-assembler (*DOT* No. 729.684-054); and marker (*DOT* No. 209.587-034). Tr. 28-29. The ALJ concluded Plaintiff was not under a disability from October 17, 2008 through the date of her decision on November 15, 2018. Tr. 29.

**IV.    Discussion**

Plaintiff challenges the ALJ's decision on one ground, arguing the ALJ erred by failing to fully and fairly develop the record which resulted in the improper consideration of Plaintiff's credibility. ECF No. 24 at 10-11. In presenting his argument, Plaintiff only points to one paragraph of the ALJ's decision which he claims was not developed. The section of the decision Plaintiff takes issue with is as follows:

> [T]he claimant's history of work is not consistent with his alleged limitations. The claimant alleged he stopped working in 2008, due to limitations imposed by the symptoms of his impairments. While there are no earnings of record since that time, the medical evidence reveals the claimant has continued to work since the alleged onset date. He was employed in 2015 as a laborer (Exhibit B1F/45), and he was working as a roofer in 2016 (Exhibit B1F/73). The record also shows that the claimant was about to return to the roofing trade in 2017, after his right shoulder surgery (Exhibit B11F/13). This work does not support his allegation that he is disabled from all full-time work.

Tr. 27.

6

Plaintiff does not dispute the medical evidence reflects he worked during the period of alleged disability. Instead, Plaintiff argues: "[w]hat is at issue in this case is that the ALJ assumed the work mentioned in Plaintiff's medical records rose to the level of disproving Plaintiff's disabled status, or, at the very least, went against his credibility before the agency." ECF No. 24 at 10-11. Plaintiff contends "the ALJ did not have sufficient information about work performed during this time period to make such a logical leap" as the "exhibits listed by the ALJ do not go into any detail about Plaintiff's work during the relevant time." ECF No. 24 at 11.

In response, the Commissioner cites to the medical record evidencing Plaintiff "was working intrinsically strenuous jobs, such as laborer and roofer, during much of the relevant period" and, as a result, "the ALJ properly concluded that Plaintiff's work activity during his alleged period of disability indicated that his medical impairments were not disabling." ECF No. 25 at 6-7. Additionally, the Commissioner argues the ALJ's consideration of Plaintiff's work as a roofer and laborer during his period of alleged disability was only one factor of the determination. *Id.* at 7.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[1] When evaluating a Plaintiff's subjective

---

[1] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This ruling clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. See *id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529; 416.929.

statements about symptoms, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322 ("*Polaski* factors").

SSR 16-3p states "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524)).

The ALJ here found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 26. The ALJ evaluated Plaintiff's symptoms based on the requirements of 20 C.F.R. § 404.1529, which includes the *Polaski* factors. To support her opinion, the ALJ cited to medical records from Plaintiff's treating providers, opinion evidence, work history, and activities of daily living.

First, the Court finds the ALJ did not err by considering Plaintiff's work history during the relevant time period. The record contains clinic notes, dated July 3, 2014 and August 7, 2014, from his treating physician Dr. Edmund Landry, M.D., who indicated Plaintiff underwent surgery for a right-hand fracture, but Plaintiff continued to work. Tr. 447-48. Additional

8

treatment notes from April 8, 2016, May 10, 2016, June 10, 2016, March 9, 2017, May 10, 2017, June 9, 2017, and April 5, 2018, signed by one of his primary medical providers Nurse Practitioner Lorna Turnage, indicated Plaintiff was employed as a laborer during the alleged period of disability. Tr. 374-85, 608-18, 623-26, 667-670. The June 10, 2016 note identifies Plaintiff as a roofer. Tr. 382. The May 10, 2017 note quotes Plaintiff as stating: "I'm doing okay – just wore out from working." On the May visit he described his shoulder pain as a 4 out of 10 with overall soreness. Tr. 615. The June 6, 2017 note quotes Plaintiff as stating: "I'm tired today – Worked 14 hours yesterday[.]" Tr. 623. On the June visit he described his pain as a 6 out of 10 but confirmed his medication was effective with pain control. *Id.* The April 5, 2018 note indicates Plaintiff was instructed to "[w]ear sunblock while working outdoors and on roofs." Tr. 670.

While it is not clear from the record whether Plaintiff was working part-time or full-time, a plaintiff's ability to perform even some work may be considered as part of an ALJ's analysis. *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (proper for the ALJ to consider the employment plaintiff maintained after the alleged onset of disability, because working generally demonstrates an ability to perform a substantial gainful activity) (internal citation omitted); *Finch v. Astrue*, 547 F.3d, 933, 935 (8th Cir. 2008) (plaintiff's work history is relevant); *Polaski*, 739 F.2d at 1322 (work history is one factor to consider in analyzing a plaintiff's subjective complaints); *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (finding it relevant to disability determination that claimant was able to work "for years with her impairments"); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work . . . were inconsistent with her claim of disabling pain"). *See also* 20 C.F.R. § 416.971 ("The work . . . that you have done

9

during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level"). Therefore, the evidence of record showing Plaintiff was able to work even if only part-time during the relevant period, including a 14-hour workday, is relevant to the analysis of Plaintiff's allegations of disabling pain.

Additionally, the ALJ did not err in considering Plaintiff's work history during the relevant period because it was only one factor used to analyze his subjective complaints of pain. The ALJ reviewed the objective medical evidence of record and determined it failed to support the severity of the Plaintiff's alleged symptoms. The ALJ detailed Plaintiff's medical history and referred to multiple objective measures during the relevant period to explain why she found Plaintiff's physical condition not disabling.

The ALJ considered Plaintiff's diagnosis of obstructive pulmonary disease and his complaints of a cough, shortness of breath, and difficulties being in the heat. Tr. 26, 49, 312, 352. The ALJ cited to the medical record indicating he was prescribed an inhaler for his symptoms. Tr. 351. The ALJ noted the record did not contain any evidence that Plaintiff requires oxygen administration or hospitalization for this condition. Tr. 26. The ALJ further noted the record shows he is a "current everyday smoker" who smokes ten to twelve cigarettes per day, exacerbating his symptoms, but despite such a habit his condition was stable with a normal respiratory effort. Tr. 26, 382, 424, 596.

The ALJ considered Plaintiff's reports of chronic pain related to his right shoulder impairment. Tr. 26. The ALJ cited to medical records from A Plus Family Clinic which documented Plaintiff had decreased range of motion in his right shoulder as compared to his left shoulder in October 2104 and limited range of motion in both shoulders in October and December 2015. Tr. 26, 311, 352, 359. The ALJ referenced the August 2016 MRI of Plaintiff's

10

right shoulder which showed moderate to marked rotator cuff tendinosis and other impairments. Tr. 26, 519. Subsequent to the MRI, Plaintiff was diagnosed with right shoulder impingement syndrome, right shoulder acromioclavicular arthritis, and right shoulder biceps tendon partial tear. Tr. 26, 438, 536-38. Plaintiff elected for surgical intervention. Tr. 444. The procedure was performed on September 21, 2016 and included right shoulder arthroscopic joint, extensive debridement; right shoulder arthroscopic subacromial decompression; right shoulder arthroscopic Mumford procedure; and right shoulder open biceps tenodesis. Tr. 26, 438-39, 441.

The ALJ considered the medical record which "reveals that the claimant recovered well from the right shoulder surgery." Tr. 26. On October 7, 2016, Plaintiff reported his bilateral shoulder pain to be a 3 out of 10. Tr. 457. On December 1, 2016, Plaintiff reported "no pain as he did preoperatively." Tr. 502. On December 29, 2016, Plaintiff reported "some slight tightness," but otherwise "the shoulder feels normal." Tr. 501. After a physical exam, Dr. Landry wrote: "Examination of the right shoulder reveals good strength, full range of motion with end range tightness." *Id.* The ALJ further noted that throughout the record, Plaintiff consistently reported effective pain control management with medication. Tr. 26, 362, 366, 370, 378, 382, 386, 391, 400, 639, 663. Notably, on February 7, 2018, plaintiff told Nurse Practitioner Turnage that he can work as long as he has his pain medication. Tr. 663. At the May 8, 2018 hearing, Plaintiff testified he only experiences a "dull pain" as opposed to pre-operatively when he experienced sharp pains. Tr. 51.

As to Plaintiff's left shoulder pain, the ALJ considered his diagnosis of acromioclavicular arthritis, impingement, and likely partial tear, but noted Plaintiff has not required surgical intervention. Tr. 26. A December 1, 2018 medical record indicates Dr. Landry's opinion that he

would be "unable to work at jobs requiring manual labor with repetitive use of the upper extremities," but does not opine an inability to maintain employment generally. Tr. 502.

The ALJ also considered Plaintiff's complaints of neck pain. Tr. 27, 627. The ALJ noted the August 2016 MRI indicated cervical spine protrusions at C4-C5 and C5-C6, causing indention at the spinal cord and stenosis at C4-C4 and C6-C7 at the foraminal level. Tr. 27, 502. To treat this pain, Plaintiff began epidural treatment at the Prescot Primary Care Center as indicated in an undated treatment note. Tr. 27, 686. There is no evidence in the record that Plaintiff has required surgical intervention for neck pain. Tr. 27. On October 9, 2015, Plaintiff exhibited full range of motion of his lumbar spine. Tr. 352. Although Plaintiff indicated some limited abilities to walk when asked by the ALJ at the hearing, he also stated he "couldn't answer that 100 percent" because he does not walk much "other than around the yard" with his daughter. Tr. 50. The ALJ noted the medical record does not indicate any complaints of ambulation limitations, he does not use an assistive device, and examinations performed on October 13, 2014, January 9, 2015, October 9, 2015, March 9, 2016, September 2, 2016, and February 6, 2017 reflect a normal gait. Tr. 27, 311, 352, 372, 424, 602.

The ALJ considered Plaintiff's activities of daily living. Tr. 26. The ALJ noted that although Plaintiff testified that he has difficulties lifting, he contradictorily also testified he is able to lift his 45-pound daughter. Tr. 50. The ALJ cited to Plaintiff's Function Report which indicated his ability to maintain his personal care without assistance (dress, bathe, care for hair, shave, feed self, and use the toilet), prepare meals daily, do laundry weekly, drive, and shop for food and clothes. Tr. 236-42. The medical record also reflects Plaintiff's ability to perform all activities of daily living independently, both pre- and post-operatively. Tr. 26, 351, 635.

In addition to the medical evidence as summarized above from his treating physicians, the ALJ considered a November 17, 2016 opinion by State agency medical consultant Susan Rosamond, M.D. Tr. 82-86, 88-99, 101-07. Dr. Rosamond opined Plaintiff could lift up to 25 pounds occasionally and 20 pounds frequently; stand or walk for up to six hours in an eight-hour workday; sit up for up to six hours in an eight-hour workday; unlimited ability to push and pull; occasionally climb ladders, ropes or scaffolds; frequently stoop, kneel or crouch; occasionally crawl; reach overhead to head level but not completely overhead with unrestricted reaching on the left and restricted to occasional on the right; and avoidance of concentrated exposure to vibration. *Id.* The ALJ gave Dr. Rosamond's opinion partial weight because although the limitations imposed were consistent with Plaintiff's history of shoulder impairments it did not fully consider limitations imposed by chronic obstructive pulmonary disease or degeneration of the cervical spine. Tr. 27.

The ALJ also considered the November 17, 2016 opinion by State agency psychologist, Kim Dempsey, Psy.D. Tr. 86-88, 99-100. Dr. Dempsey opined there was insufficient evidence to determine the Plaintiff's mental limitations. The ALJ gave this statement no weight because she "did not provide a function-by-function assessment of the limitations imposed by any mental impairment." Tr. 27-28.

An ALJ may decline to credit a plaintiff's subjective complaints if the evidence as a whole is inconsistent with the plaintiff's testimony. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). The record evidence does not support Plaintiff's claims as to the disabling limitations imposed by his conditions, thus the ALJ properly discounted his testimony. The ALJ did not accept or reject Plaintiff's subjective complaints solely on the basis of her personal observations, instead, the ALJ cited specific inconsistencies that did not support Plaintiff's testimony. For

13

example, the ALJ referred to medical records evidencing Plaintiff received only conservative treatment via an inhaler for his obstructive pulmonary disease, no surgical intervention for his left shoulder and neck impairments and did not require an assistive device for ambulation. An ALJ may properly weigh conservative treatment as a negative factor while assessing a claimant's self-reports concerning his symptoms. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

The ALJ also noted that cigarette smoking exacerbated his symptoms related to his chronic obstructive pulmonary disease, but his condition still remained stable. Tr. 26. The Court notes that throughout the medical record, his treating physician recommended smoking cessation. Tr. 353, 357, 364, 368, 373, 377, 380, 385, 459. Plaintiff did not comply with the recommendation. *See Atchley v. Saul*, No. 1:19-CV-00114-NCC, 2020 WL 5814418, at *6 (E.D. Mo. Sept. 30, 2020) (a Plaintiff's failure to quit smoking as directed is non-compliance with prescribed medical treatment and can weigh against Plaintiff's credibility).

Moreover, the ALJ aptly considered Plaintiff's ability to work as a laborer prior to his right shoulder surgery which included the notation of a 14-hour workday, significant improvement with right shoulder pain symptoms after the surgery, and his consistent reports of manageable pain symptoms with medication. In fact, Plaintiff reported to his treating provider that he can work with pain medication. Tr. 663. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (evidence of relief from medication supports ALJ's findings that complaints were not fully credible); *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability"); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of

effective medication resulting in relief . . . may diminish the credibility of a claimant's complaints."); *Wildman v. Astrue*, 596 F.3d 959, 965 n.3 (8th Cir. 2010) (ALJ may properly consider that pain is "fairly," though not completely, under control when the plaintiff is compliant with medication).

Additionally, substantial evidence supports the ALJ's determination that Plaintiff's statements concerning full disability due to walking and lifting difficulties were inconsistent with the objective medical evidence showing a normal gait during several examinations and his own testimony supporting his ability to independently complete a variety of daily activities including lifting his 45-pound daughter, doing laundry, preparing meals, and shopping. *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (daily activities and ability to do them conflicted with allegations of disability). Multiple treatment notes with his primary care physician document that Plaintiff did not report any difficulties with his activities of daily living.

Thus, the Court finds the ALJ gave good reasons for finding Plaintiff's subjective complaints were not entirely consistent with the evidence in the record. "If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). The ALJ gave Plaintiff's allegations as much weight as substantial evidence of record supports while appropriately limiting plaintiff to a range of light work with no climbing of ladders, ropes or scaffolds; no kneeling, crouching or crawling; no concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants; and only occasional overhead reaching, pushing or pulling bilaterally. Tr. 25.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff John Coleman Lane's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 25th day of November, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**